Argued March 21, affirmed as modified April 28, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
MILLER (No. 397-483), *Respondent, and*
MILLER, *Appellant.*
534 P2d 512

*James B. Griswold,* Portland, argued the cause for appellant. With him on the brief were Green, Griswold & Pippin, Portland.

*Roger L. Meyer,* Portland, argued the cause for respondent. With him on the brief were Sabin, Newcomb, Sabin & Meyer, Portland.

Before SCHWAB, Chief Judge, and FOLEY and HOWELL, Judges.

FOLEY, J.

This is a suit for dissolution of marriage brought by the husband. The wife appeals from the decree entered by the trial court. She asks that the husband be ordered to pay her costs and expenses of suit in addition to attorney fees, she asks that she be given a greater share of the property, and she asks that the marital support payments to her be increased.

At the time of the hearing in this case, the parties had been married nearly 21 years. The husband was 42 years old and the wife was 41 years old. The parties had three children: twin boys who were 20 years old and a daughter, Dorothy, who was 14 years of age. The husband is a licensed architect and is a partner in a three-member firm. During the years 1968-1973 his adjusted gross income fluctuated from a low of $20,042 in 1970 to a high of $38,579 in 1972. In 1973

his adjusted gross income was $27,618. Due to economic conditions, the husband thought his 1974 income would be close to that of 1973. His average net monthly income for the 1968-1973 period approximates $1,900, although this figure varies greatly, and his monthly "draw" from his partnership is $1,575.

The wife did not begin working until March 1973, when she began teaching at a private school. During the 1973-74 school year her net pay was $372 a month. She has a contract for 1974-75 which provides for a gross income of $7,000 paid over 12 months. She does not have a college degree or a teaching certificate, but has established a personal program designed to accomplish her certification and to complete a masters degree by the end of the summer of 1976. By that time, according to current pay schedules, the wife hopes to achieve an annual gross income of approximately $9,800.

In its decree dissolving the marriage, the trial court placed the daughter in the custody of the wife, subject to reasonable visitation rights for the husband, and ordered the husband to pay $250 per month in child support. The wife was awarded $680 per month in marital support for the months of July, August and September 1974 (during which period she had no income) and $325 per month thereafter, continuing through and including the month of May 1977. The trial court also awarded the wife full interest in two trusts created for her by her relatives, which will pay about $4,000 a year upon the death of those relatives.

The trial court ordered the husband to pay each of the two sons $100 per month for his room and board, together with the actual cost of tuition and books, for his college education, through the month of February 1975, at which time the sons attained the age of 21

years. The educational support for the two sons totals approximately $325 per month.

■ Although the trial court realized it had no authority to order the husband to continue educational support for the two sons beyond February 1975, ORS 107.108, the trial court noted that it believed that the husband would voluntarily continue such payments · after that date. It therefore considered such projected payments as part of the husband's personal expenses projection. The wife claims that beginning in February 1975, the husband will have $325 more per month available because his *legal* obligation to support the sons in school will have terminated and that therefore the trial court should have awarded the wife a larger amount in marital support. We think that the husband's projected expenditures on behalf of the sons, just like any other item of personal expense, can be considered on its merits.

The trial court ordered the husband to pay the outstanding obligations of the parties, which totaled over $2,400. The husband was also ordered to provide medical insurance benefits for the minor child, and he was ordered to pay attorney fees for the wife in the amount of $2,100.

A lot, located in Neskowin, and valued at $8,000 by both parties, was awarded to the husband.

The wife was awarded the parties' home, subject to an obligation to pay the husband $8,000 on or before June 1, 1978. Said obligation was established as a judgment lien against the property until paid and the obligation shall bear interest at the rate of six percent per annum from and after June 1, 1978, or the happening of one of several events listed in the trial court's decree. Since the home constituted the principal marital asset, it is this provision which seems to most disturb the wife. The wife contends that the

trial court over-valued the home and the property on which it is situated. Various estimates were presented regarding the value of the home and property. It is sufficient to note that we have reviewed the record and we are satisfied that the trial court correctly valued the home and land at approximately $60,000. Since the outstanding mortgage was approximately $34,400, the equity in the home and land was approximately $25,600.

There appears to be no significant disagreement as to the actual award of any particular items of personal property. Rather, the wife apparently disputes the value which the trial court attributed to the personal property and the over-all effect which this may have had on the property distribution. Having reviewed the record, we are satisfied that the trial court's conclusions were correct.

■■ From our review of the record in this case we are satisfied that the trial court made as fair a distribution of the property as possible. The considerations set forth in *Kitson and Kitson,* 17 Or App 648, 523 P2d 575, Sup Ct *review denied* (1974), were properly applied. Neither the husband nor the wife will be able to live in the style to which each was accustomed during the marriage, but this is merely the reflection of the fact that it costs more to run two households than one. We also agree with the trial court's decision not to award costs and expenses of suit to the wife.

■ We note, however, that the trial court decree must be modified in one respect. The trial court ordered the husband to "maintain life insurance in a minimum amount of $50,000, designating his three children as irrevocable beneficiaries thereof." A parent can be required to provide support and maintenance for his minor children, and the trial court is

given fairly broad discretion in determining the means of achieving this end. *See* ORS 107.105.[①]

ORS 107.105(1)(a) refers to the "minor children of the marriage"; the reference to "such children" in ORS 107.105(1)(b) therefore limits any child support provisions to the child's minority which according to ORS 109.510 ends at the attainment of 18 years.

However, ORS 107.108, enacted during the same legislative session as ORS 109.510 was reenacted, expands this limitation in certain circumstances: it al-

---

① 

"(1) Whenever the court grants a decree of annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"(a) For the future care and custody of the minor children of the marriage as it may deem just and proper. * * *

"(b) For the recovery from the party not allowed the care and custody of such children, such amount of money, in gross or in instalments, or both, as may be just and proper for such party to contribute toward the support and welfare of such children. * * *

"* * * * * *

"(e) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances.

"(f)(A) [If] [t]here is a minor child of the marriage, for the appointment of one or more trustees to hold, control and manage for the benefit of the children of the parties, of the marriage or otherwise, such of the real or personal property of either or both of the parties, as the court may order to be allocated or appropriated to their support and welfare; and to collect, receive, expend, manage or invest any sum of money decreed for the support and welfare of minor children of the parties.

"* * * * * *

"(C) The court shall direct the terms of the trust and make provision for the disposition or distribution of such money or property to or between the parties, their successors, heirs and assigns after the purpose of the trust has been accomplished. * * *

"* * * * * *." ORS 107.105

lows for requiring the provision of "support or maintenance of a child attending school," who is defined to be "a child of the parties who is unmarried, is 18 years of age or older and under 21 years of age and is a student regularly attending school * * *." ORS 107.108(1) and (4).

Earlier Oregon decisions expressed the view that a divorce court is without power to provide for the support of a child after the child attains his majority. *See Jackman v. Short,* 165 Or 626, 109 P2d 860, 133 ALR 887 (1941); *Mack v. Mack,* 91 Or 514, 179 P 557 (1919); *Langnese and Langnese,* 13 Or App 88, 508 P2d 831 (1973). The provisons of ORS 107.105 and 107.108 do not contradict—and in fact clearly follow—such an approach.

In requiring that the husband maintain life insurance for the benefit of the children, the trial court is in effect requiring the husband to make periodic payments which will further ensure the required support and maintenance of the children. Whether it is required as part of a property division or as a form of child support, life insurance is a form of protection which the trial court may require pursuant to ORS 107.105 and 107.108 so long as the required coverage does not extend beyond the age limitations for the children set forth in those statutes.

In the present case, the twin sons were 20 years of age, unmarried and attending school at the time of the decree. Although they were no longer minors and therefore no longer in the "custody" of either party pursuant to ORS 107.105, they are specifically made "parties" to the dissolution proceeding, for the purposes of support and maintenance only, pursuant to ORS 107.108(3). They therefore could properly be made beneficiaries of a life insurance policy under the court's decree.

The decree is modified to provide that the two sons shall be designated as beneficiaries, along with the wife as beneficiary-trustee for the use and benefit of Dorothy, of the $50,000 in life insurance. Upon the sons' reaching the age of 21 years (which has already occurred), it will be the obligation of the husband to continue to provide and maintain life insurance coverage of at least $17,000, with the wife continuing as beneficiary-trustee for Dorothy, born October 27, 1959, until Dorothy reaches the age of 18. After Dorothy reaches her majority she should be made a direct beneficiary of at least $17,000 in life insurance until age 21 if she fulfills the requirements of ORS 107.108(1), (4).

Affirmed as modified.

SCHWAB, C. J., concurring.

The majority opinion does not deal with the question of whether in a review de novo an appellate court has the power to modify the decree of a trial court in a manner favorable to a respondent when the respondent has not affirmatively sought a change of the decree in that he has not cross-appealed. Nevertheless, perhaps this is a question we need not consider here because, although the respondent did not cross-appeal, he clearly raised the issue which resulted in the modification in his brief and argument, without objection from appellant.